United States District Court
Southern District of Texas
**ENTERED**
April 29, 2021
Nathan Ochsner, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| CALSEP, INC. and CALSEP A/S, | § | |
| | § | |
| *Plaintiffs*, | § | |
| vs. | § | |
| | § | |
| INTELLGIENT PETROLEUM | § | NO. 4:19-CV-1118 |
| SOFTWARE SOLUTIONS, LLC, | § | |
| ASHISH DABRAL, INSIGHTS | § | |
| RESERVOIR CONSULTING, LLC, | § | |
| and PASHUPATI SAH, | § | |
| | § | |
| *Defendants*. | § | |
| | § | |

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Before the Court is Plaintiffs Calsep, Inc.'s and Calsep A/S's (collectively "Plaintiffs") motion to show cause and motion for sanctions against Defendants Ashish Dabral ("Dabral"), Insights Reservoir Consulting, LLC ("IRC"), and Intelligent Petroleum Software Solutions, LLC ("IPSS").[1] ECF Nos. 256, 258/259, & 284.[2] Having considered the briefing, evidence, applicable authorities, and the

---

[1] Judge Keith Ellison, the District Judge to whom this case is assigned, referred all discovery motions pursuant to 28 U.S.C. § 636 (b)(1)(A). Order, ECF No. 75. Subsequently, the Judge Ellison referred Plaintiffs' motions for sanctions and to show cause. Order, ECF No. 275. A motion for sanctions seeking entry of a default judgment is a dispositive motion appropriate for a Report and Recommendation.

[2] Defendants filed responses. ECF Nos. 263, 286. Plaintiffs filed a reply. ECF No. 264/265. Defendants filed a sur-reply. ECF No. 270. The motion to show cause is now moot since the Defendants have responded and the Court held two days of hearings, including an evidentiary hearing at which both sides presented expert testimony.

1

record, the Court recommends that the Plaintiffs' motion for sanctions should be granted.

## I.     BACKGROUND

Plaintiffs sued Defendants, alleging *inter alia* misappropriation of trade secrets after their employee Defendant Pashupati Sah ("Sah") left their employment. Plaintiffs allege that Sah downloaded Calsep's PVT trade secret information to his personal external storage devices. Sah then used Plaintiffs' trade secrets with the other Defendants to develop inPVT software to compete with Plaintiffs' PVT software used in the oil and gas industry. Original Compl., ECF No. 1; *accord* Fourth Am. Compl., ECF No. 205.

Since filing this suit, Plaintiffs diligently attempted to obtain discovery from Defendants. Specifically, Plaintiffs sought production of Defendants' source code control system, which ordinarily contains the complete, auditable, and accurate history of the creation and evolution of software source code over time. Myers Decl., ECF No. 51-1 at 9. Source code control systems "manage and record the intricate details of every change to the source code over time – who made the change, when the change was made, and what the change was." *Id.* Plaintiffs' expert Monty Myers intended to compare Plaintiffs' source code control system with Defendants' source code control system at various points in time to see what influenced the design of Defendants' source code. *Id.* at 11. Access to Defendants' source code control

system would allow Myers to see the changes and evolution of Defendants' source code, including if, when, and how Plaintiffs' trade secrets were introduced into Defendants' software or source code. *Id.* According to Myers, the source code control system is the industry standard for review of a project. *Id.* It is undisputed that Defendants maintained a source code control system to manage the historical development of their code. Schnell Decl., ECF No. 263 at 3; Dabral Aff., ECF No. 16-1 ¶¶ 16-17.

Plaintiffs filed their motions for sanctions, claiming that only days before the last court ordered production, Defendants permanently deleted files from their source control code system. Plaintiffs contend that the permanent destruction was intentional and prejudicial. ECF No. 259 at 17. Both Plaintiffs' and Defendants' experts agree that data has been permanently deleted.  Myers Decl., ECF No. 259-1 at 6-20 (identifying deleted data from Defendants' servers); Schnell Decl., ECF No. 263-6 at 4, 5, 8 (confirmed that the PVTsim-Database.docx and one project folder that Myers identified as deleted, the IPSS URCAT project, were not found on the servers, and that Defendant deleted a production database). The experts do not agree on the extent of the permanent destruction or what is still available for Plaintiffs to prove their case. Plaintiffs claim that the destruction has been so extensive that their expert cannot perform the required analysis necessary to prove their case. ECF No. 259-1 at ¶ 49 (Plaintiffs' expert has no confidence that the materials Defendants

produced are complete, accurate or reliable for his analysis). Defendants claim that there is data available for the experts to perform their analysis, a side-by-side comparison of the source code. ECF No. 263-6 at 4-5 (confirmed that the source code for the projects were able to build without any errors and could go back in time to review source code); ECF No. 276 (Calsep can perform source code comparison). The Court held an evidentiary hearing so that both experts could present their opinions on the scope of destruction and possible next steps to the Court. Minute Entry Order, ECF No. 291.

## II.   LEGAL STANDARD REGARDING SANCTIONS

Courts rely on the good faith and diligence of counsel and the parties to follow discovery rules and conduct themselves honestly before the court. *See Victor Stanley, Inc. v. Creative Pipe, Inc.,* 269 F.R.D. 497, 525 (D.Md.2010) (citations omitted). "Discovery in civil litigation takes place largely on faith—the faith that each party will voluntarily provide all relevant and responsive evidence to its opponent, even when that evidence is prejudicial to the producing party's case." *Balancecxi, Inc. v. International Consulting*, No. 1:19-CV-0767, 2020 WL 6886258, at *13 (W.D. Tex. Nov. 24, 2020). "When litigants fail to meet these expectations, courts become enmeshed in lengthy and contentious fights over spoliation of evidence." *Quantlab Techs. Ltd. (BGI) v. Godlevsky*, No. 4:09-CV-4039, 2014 WL 651944, at *8 (S.D. Tex. Feb. 19, 2014).

4

"Spoliation is the destruction or the significant and meaningful alteration of evidence." *Rimkus Consulting Grp., Inc. v. Cammarata,* 688 F.Supp.2d 598, 612 (S.D.Tex.2010) (citing The Sedona Conference, The Sedona Conference Glossary: E–Discovery & Digital Information Management (Second Edition) 48 (2007)). Routine deletion of electronic information is generally not considered spoliation "unless there is a duty to preserve the information." *Id.* The duty to preserve "arises when a party has notice that the evidence is relevant to litigation or ... should have known that the evidence may be relevant to future litigation." *Id.* at 612–13 (citing *Zubulake v. UBS Warburg LLC (Zubulake IV),* 220 F.R.D. 212, 217–18 (S.D.N.Y.2003)) (internal quotation marks omitted).

To prevent spoliators from benefitting from their wrongdoing, Federal Rule of Civil Procedure 37 and the "inherent power to regulate the litigation process" allow the court to impose sanctions. *Id.* at 611. Rule 37 permits the court to impose sanctions when a party "fails to obey an order to provide or permit discovery." FED. R. CIV. P. 37 (b)(2)(A).[3] Under Rule 37, the court has broad discretion in fashioning its sanction. *Law Funder, L.L.C. v. Munoz*, 924 F.3d 753, 758 (5th Cir.

---

[3] "The court's inherent powers fill the void when a litigant has not directly violated a court order but where sanctions are nonetheless appropriate." *Quantlab*, 2014 WL 651944, at *8. "The imposition of sanctions based on the Court's inherent powers are limited to instances involving bad faith or a willful abuse of the judicial process." *Id.* (quoting *Tandycrafts, Inc. v. Bublitz,* No. 3:97–CV–1074–T, 2002 WL 324290, at *5 (N.D. Tex. Feb. 27, 2002)). Inherent authority "must be exercised with restraint and discretion." *Id.* (quoting *Roadway Exp., Inc. v. Piper,* 447 U.S. 752, 764, 100 S.Ct. 2455, 65 L.Ed.2d 488 (1980)).

5

2019), as revised (June 6, 2019). The rule provides a list of possible sanctions, including litigation-ending sanctions, such as striking pleadings, dismissing the action, or entering a default judgment. FED. R. CIV. P. 37 (b)(2)(A)(iii), (v), & (vi); *Munoz*, 924 F.3d at 758. Under Rule 37 (e), before imposing sanctions, the Court must find the following four elements:

1. A party was obligated to preserve electronically stored information ("ESI") in anticipation of or conduct of litigation;

2. the ESI is lost;

3. the party failed to take reasonable steps to preserve the ESI; and

4. the ESI cannot be restored or replaced.

FED. R. CIV. P. 37 (e); *Balancecxi*, 2020 WL 6886258, at *12. Upon a finding of prejudice to another party, the court may order measures no greater than necessary to cure the prejudice. FED. R. CIV. P. 37 (e)(1). The most severe sanctions, including dismissal or default judgment, are only permitted when the court determines that the ESI was lost or destroyed "with the intent to deprive another party of the information's use in the litigation." FED. R. CIV. P. 37 (e)(2); *Balancecxi*, 2020 WL 6886258, at *12.

Dismissal "must be available to the district court in appropriate cases, not merely to penalize those whose conduct may be deemed to warrant such a sanction, but to deter those who might be tempted to such conduct in the absence of such a deterrent." *Moore v. CITGO Ref. & Chemicals Co., L.P.,* 735 F.3d 309, 315–16 (5th

6

Cir.2013) (internal quotation marks omitted). "[D]ismissal is a severe sanction that implicates due process." *Id.* at 315 (citing *FDIC v. Conner*, 20 F.3d 1376, 1380 (5th Cir. 1994)).

In *Moore,* the Fifth Circuit reiterated that the *Conner* four-factor test must be satisfied before a district court can terminate a case as a sanction for the violation of a discovery order, as follows:

1. the refusal to comply results from willfulness or bad faith and is accompanied by a clear record of delay or contumacious conduct;

2. the violation of the discovery order must be attributable to the client instead of the attorney,

3. the violating party's misconduct must substantially prejudice the opposing party; and

4. a less drastic sanction would not substantially achieve the desired deterrent effect.

*Id.* at 316.

Here, there are no allegations that Defendants' attorneys were responsible for the spoliation of evidence. Thus, the Court will omit any discussion of this factor from the analysis. The Court will focus on the duty to preserve, culpability, and relevance/prejudice.

### III.   PLAINTIFFS ARE ENTITLED TO SANCTIONS

**A.   The Defendants' Duty to Preserve Arose No Later Than The Filing Of This Lawsuit.**

The general rule is that "the duty to preserve arises when a party 'has notice that the evidence is relevant to litigation or ... should have known that the evidence may be relevant to future litigation.'" *Quantlab*, 2014 WL 651944, at *8 (citations omitted). "The duty to preserve material evidence arises not only during litigation but also extends to that period before the litigation when a party reasonably should know that the evidence may be relevant to anticipated litigation." *Id.* (citations omitted).

Without question, the duty to preserve arose no later than when the litigation was filed on March 27, 2019. ECF No. 1. Arguably, a duty to preserve arose when Sah left Plaintiffs' employment, taking Plaintiffs' trade secret software, because Defendants should have anticipated that Plaintiffs would protect their trade secrets. However, both parties focused on the filing of litigation and insufficient evidence was presented to conclude that the duty arose earlier.

**B.   Culpability: Defendants' Actions Show Bad Faith.**

Second, to impose death penalty sanctions, the court must find evidence of bad faith. *Rimkus,* 688 F.Supp.2d at 614 (collecting cases). Typically, bad faith must be inferred. A court may infer bad faith when "a party purposely loses or destroys relevant evidence," *Managed Care Solutions, Inc. v. Essent Healthcare, Inc.,* 736

8

F.Supp.2d 1317, 1322 (S.D. Fla. 2010), or destroyed the evidence "with the intent to deprive another party of the information's use in the litigation," FED. R. CIV. P. 37 (e)(2).

Early in this litigation, the Parties agreed to a preliminary injunction. Proposed Agreed Order, ECF No. 197. In the agreed order, the Defendants were ordered to return any of Plaintiffs' trade secret information in their possession and were further ordered not to destroy any potentially relevant evidence, including electronic data. Agreed Order Granting Prelim. Inj., ECF No. 198.

Despite this Court order to which Defendants agreed, Defendants have delayed discovery, manipulated electronic data, and permanently deleted a significant amount of electronic data. This Court has conducted multiple discovery hearings and issued multiple orders requiring the Defendants to produce its data to Plaintiffs. After conducting multiple hearings, including an evidentiary hearing at which both sides presented expert testimony, the Court concludes that the Defendants actions violated multiple court orders, were willful, and designed for the purpose of thwarting discovery to prevent Plaintiffs from being able to prove their claims.

### 1. Defendants filed false affidavits.

All Defendants have played a role in thwarting discovery and both Sah and Dabral have filed false affidavits intended to mislead this Court about the events

leading up to this lawsuit. *See* Order, ECF No. 161 at 3-4 (finding Sah was IPSS's agent based on their contract with stock grants, Sah's recruiting of others to work for IPSS, Sah's business card showing him as Chief Technology Officer of IPSS, IPSS's website listing Sah as part of its core team of consultants, and Sah giving his IPSS business card to a marketing agent, and the evidence was contrary to Dabral's conclusory affidavit claiming to be IPSS's only employee and Sah's conclusory affidavit that he did not work for IPSS); *see also* Dabral Aff., ECF No. 35-1 ⁋ 21 (IPSS has no employee except Dabral); Dabral Aff., ECF No. 91-8 (IPSS has no operations); Sah Aff., ECF No. 38-1 ⁋ 17 (Sah claims he does not work for IPSS).

More significantly, Dabral testified that Sah never mentioned possessing Calsep's files, never offered to provide those files, and none of Calsep's trade secret information was used to develop Defendant's competing InPVT product. Dabral Aff., ECF No. 91-8 ⁋ 7.

To the contrary, the uncontroverted evidence is that Calsep's data ended up on Bright Petroleum Software Solutions' ("BPSS") server, which housed the Defendants' data and software for the development of its product, for which BPSS wrote the code. Dabral Aff., ECF No. 35-2 ⁋ 13-16 (BPSS used to write code for IRC's software); Dabral Aff., ECF No. 98-1 ⁋ 7 (Dabral oversaw the development of InPVT at BPSS's headquarters in India); Price Aff., ECF No. 91-11 ⁋ 7 (Defendants' forensic expert admits at least one of Calsep's files was found on both

Sah's USB device and the BPSS server); Myer's Aff., ECF No. 9-10 (Plaintiff's expert testifies that file name PVTSim-Databased.docx, appearing to be Plaintiffs' trade secret information on the development of their software, was added to Defendants' server within two months of Sah's departure from Calsep and joining Defendants, and was subsequently permanently deleted); Tr. Hrg. 3/25/21 at 220-21 (Defendants' expert Schnell testifies that the file name PVTSim-Databased.docx was permanently destroyed from the server).

## 2. *Defendants delayed discovery*

From the outset, Defendants delayed discovery, trying to narrow the scope of what Plaintiffs' expert could review. As early as June 2019, only two months after filing suit, Plaintiffs requested the complete source code control system for Defendants' InPVT code. Pl.'s 2d RFP, ECF No. 246-2 at 7; ECF No. 51 at 5-6. Defendants refused to produce their source code control system, instead trying to limit production to their source code and sought the appointment of a special master to conduct the comparison of the source code. ECF No. 63 at 14-17.

Significantly, Plaintiffs sought review of Defendants' source code *control system* to understand the history of the source code development and whether Plaintiffs' software was used to create it. Defendants sought to limit the review to the final product, the source code itself. According to Plaintiffs' expert, review of the source code alone is not adequate. He gave the analogy, if a book had been

translated from English to Russian, a comparison of the two books would not show any identical lines even though the Russian book is entirely derived from the English book. "Two different computer programs could contain the identical algorithms, methods, techniques, and know-how yet a source code comparison could show that there was not a single line of source code similar between the two." Accordingly, Plaintiffs' expert testified that source code comparison is not the appropriate tool for the analysis in this case. Myers Decl., ECF No. 51-1 at ⁋ 51. After a hearing on the Plaintiffs' motion to compel and Defendants' motion to appoint a special master, Judge Ellison denied Defendants' motion. Minute Entry, April 6, 2020.

### 3. *Defendants manipulated discovery and deleted data.*

When Defendants' attempt to limit production failed, they made multiple productions of data that had been manipulated and significant portions had been deleted. Tr. Hrg. 3/25/21 at 101-02 (Plaintiffs' expert Myers testified that Defendants' productions contained a highly unusual amount of manipulation, moving around of the data, and deletions making it impossible to piecemeal together data).

#### a. *Within days of the Agreed Preliminary Injunction Order, Defendants deleted data.*

Within days of the agreed order, Defendants permanently deleted a "html deleted" change set. Myers Decl., ECF No. 265-1 at 6. Two days later, Defendants

deleted an "employee information deleted" change set. Myers Decl., ECF No. 259 at 11. Both deletions were in violation of the agreed order.

### b. Defendants' April 2020 production was not usable.

Plaintiffs' expert testified in detail about the various productions Defendants made. The April 2020 production was not usable. *Id.* at 58. This caused Plaintiffs' expert to waste months trying to ascertain and then correct the errors in the data instead of analyzing the data to determine whether Defendants had improperly used Plaintiffs' trade secrets. *Id.* at 59.

### c. Defendants intentionally deleted a database Plaintiffs requested.

Plaintiffs' expert testified that he was unable to restore the database, error messages were generated, and that databases were missing that were necessary to restore the source code repository. Myers Aff., ECF No. 248 at 9-10. For example, Plaintiffs identified four missing databases, including a BPSS collection, in the April 2020 production and requested Defendants provide them. ECF No. 271-2. Plaintiffs' expert testified that, in a later production, he reviewed data showing that eight minutes after Plaintiffs sent a follow up email to Defendants' counsel asking for a status report, the requested database for BPSS was permanently deleted. Tr. Hrg. 3/25/21 at 67. The expert further testified that the deletion was intentional, requiring advanced skill, and responding to the warning that the deletion would be irreversible.

*Id.* at 68. Defendants admit they destroyed the BPSS collection database. *Id.* at 15; ECF No. 271-2 at 2.

> d. *Defendants' July 2020 production was also not usable.*

A second production in July 2020 was equally not useful. *Id.* at 59. Defendants' expert even agreed that the second production had severe issues. *Id.*; Schnell Aff., ECF No. 263-6 at 3. Plaintiffs' expert confirmed that four days before he received the July production, 185,000 work items in that data were destroyed. Tr. Hrg. 3/25/21 at 55; Myers Decl., ECF No. 259-1 at 19.

> e. *Defendants' September 2020 production revealed permanent deletions and deficiencies.*

Defendants' September 2020 production could be installed and restored, but it contained severe deficiencies and permanent destructions. Tr. Hrg. 3/25/21 at 60. After two productions, for the first time, Defendants produced two servers, the 245 and 253 servers. Until then, Plaintiffs were unaware that Defendants were using two servers. *Id.* Plaintiffs' expert testified that separate and different destructions occurred on both servers, permanently deleting files in its source code control system. Tr. Hrg. 3/25/21 at 46, 55, 62-63. This is unusual because the purpose of such a system is to maintain a complete record. *Id.* at 62-63. Items can be removed from a project, but a historical trail allows the user to go back to review the entire permanent record. *Id.* Because of the Defendants' deletions, the permanent record has been destroyed and it is impossible to see the volume or content of what was

deleted. *Id.*; *see, e.g.*, ECF No. 248 at 14 (listing files and change sets destroyed, for example: Defendants created PVT Simulator project folder and destroyed it after 11/18/19; check in Added PVTSim-Database.docs change set, later destroyed; check in Added INPVT.rar change set, later destroyed); Myers Decl., ECF No. 265-1 at 4; Myers Decl., ECF No. 259-1 at 11, 14-16 (charts of files deleted after court's orders).

Plaintiffs' expert testified to the steps required to permanently delete data from the source code control system. *Id.* at 63-65. Unlike a simple deletion by pressing the delete button, deletions from the source code control system require the user to go into the bowels of the system, requiring advanced knowledge. *Id.* Before the deletion can be completed, a warning appears notifying the user that the data will be permanently deleted and then a prompt asks, "are you sure you want to delete?" *Id.* at 65. The user must respond to the prompt before the data is irreversibly deleted. *Id.* at 65-66; *see* ECF Nos. 288-23, 288-24, 288-15 (graphics of change prompts).

The evidence shows that Defendants' explanation for the existence of two servers is not believable. Defendants suggest that, because they needed more room, a new, bigger server was created. *Id.* at 9. According to Defendants, data from one server was copied to the other server and duplicate files were deleted. *Id.* at 9-10. If this were true, a complete record would still exist intact between the two servers, but according to Plaintiffs' expert, a complete record does not exist. *Id.* at 62-63 (Myers' testimony). Even Defendants admit that files have been permanently deleted. *Id.*

at 12. Defendants argue that Plaintiffs "likely" have the information deleted from one server in some other form on the other server. *Id.* Defendants' expert testified that there were files permanently deleted and that the way Defendants stored the data is not best practices. *Id.* at 203.

> 4. *Defendants violated multiple court orders to produce data without manipulation.*

Before and after the Agreed Preliminary Injunction Order, this Court conducted multiple discovery hearings and issued orders requiring the Defendants to produce their data to Plaintiffs. Defendants violated multiple court orders to preserve and produce their data without deletions or manipulations. Agreed Prelim. Inj. Order, ECF No. 198; Order, ECF No. 150, Order ECF No. 161; Order, ECF No. 230; Order 250.

First, on February 25, 2020, the Court granted Plaintiffs' motion to compel, ECF No. 108, ordering IPSS, Dabral, and IRC to produce everything they gave to their computer forensics expert, Paul Price, who formed an opinion based on a comparison of the contents of Sah's external storage devices and the BPSS computer systems. Order, ECF No. 150. At a hearing in December 2020, the Court learned that Defendants did not produce everything that they provided to their forensic expert, withholding the ProArch report, which contained significant information about the review of Defendants servers early in the litigation and before many of the deletions occurred. *See* Tr. Hrg. 12/9/20, ECF No. 280 at 9-11. Instead of producing

it as ordered, eight months later Defendants attached it as an exhibit to their response to Plaintiff's motion to compel. *Id.*; Tr. Hrg. 3/25/21 at 22-23; *see* ProArch Rept., ECF No. 255-1. This was a violation of the Court's order.

On March 2, 2020, the Court granted another motion to compel and ordered IPSS to produce Sah's storage devices, containing the allegedly illegally downloaded software from Plaintiffs. Sah never produced those devices. The Court concluded that Sah was an agent and employee of IPSS and therefore it had the legal right and practical ability to obtain any items responsive to Plaintiffs' discovery requests that were in Sah's possession. Order, ECF No. 161 at 3-4 (granting Plaintiffs' motion to compel, ECF Nos. 109 & 110). IPSS claimed that it attempted to obtain the storage devices from Sah, but Sah failed to turn them over; therefore, IPSS claimed that it was unable to comply with this part of the Court's order compelling production. ECF No. 233. At this point in time, Defendants had not yet produced their data to Plaintiffs. Had Defendants simply produced a forensic copy of their servers in response to Plaintiffs' initial production request, production of Sah's storage devices would likely have been unnecessary.

On July 31, 2020, the Court held another hearing, granted Plaintiffs' motion to compel, and ordered Sah to produce the storage devices by August 7, 2020. ECF No. 230 (granting ECF No. 226). In violation of that order, and subsequent orders,

Sah never produced the devices.[4]

At that same July 31st hearing, Plaintiffs also sought to compel Defendants Dabral and IRC to comply with outstanding discovery requests. ECF No. 246; Tr. Hrg. 8/26/20, ECF No. 252 at 13-28. Because Plaintiffs had filed the motion the day before the hearing, the Court gave the Defendants time to review the motion, determine what Plaintiffs were requesting, and comply with those requests. Tr. Hrg. 8/26/20, ECF No. 252 at 17-18, 19, 20-21, 22-26; Order, ECF No. 250. The Court ordered the Defendants to comply with their discovery obligations in good faith and to produce the source code control system without manipulations. Tr. Hrg. 8/26/20, ECF No. 252 at 23.

Defendants filed a response, stating that they were producing the entirety of their source code repository, not just related to the code at issue, but unrelated source code to "leave no doubt as to the completeness of the information provided to Calsep

---

[4] Subsequently, the Court granted Plaintiffs' motion to show cause and ordered Sah to produce the storage devices and respond to Plaintiffs' fourth amended complaint by August 21, 2020, or risk entry of default judgment against him, Order, ECF No. 241, and ordered Sah to pay Plaintiffs' the attorneys' fees they incurred bringing the motions, Order, ECF No. 244.  The record in this case is unequivocal that Sah has failed to comply with the Court's orders. He has not responded to the Plaintiffs' fourth amended complaint, has not produced the storage devices, and has not provided any payment for Plaintiffs' attorneys' fees. Plaintiffs sought a default judgment and injunctive relief against Sah. ECF No. ECF Nos. 238 & 249. The Court held another hearing and then entered a Report and Recommendation, opining that Plaintiffs' motion be denied without prejudice because the claims against the other Defendants Dabral, IRC, and IPSS remained pending, and they continued to defend against the claims asserted; the Court found that entering a default judgment against Sah and taking all well-pleaded allegations against Sah as true, and entering a permanent injunction on that basis, would harm the remaining Defendants' ability to present their defenses in this case. R&R, ECF No. 274 at 13-14. Judge Ellison adopted the R&R. Order, ECF No. 277.

pursuant to the Court's instructions." ECF No. 255 at 8. Further, Defendants represented that all source code files were produced, except for files deleted in the regular course of business before this lawsuit was filed. *Id.* at 9. Contrary to these representations and despite this Court's specific instructions on the record, only days before the Court imposed deadline for production, Defendants permanently deleted 13 change sets data from their source code control system. ECF No. 259 at 5-6, Myers Decl., ECF No. 259-1 at ⁋ 27; Tr. Hrg. 3/25/21 at 55.

Defendants' actions reveal a pattern of behavior that raise the inference of bad faith and intent to deprive the Plaintiffs of the information on the Defendants' source code control system in this litigation.

## C.    Relevance and Prejudice

The party asserting spoliation has the burden to show that the lost information is relevant and prejudicial, which are related findings. Lost or destroyed evidence is relevant if "a reasonable trier of fact could conclude that the lost evidence would have supported the claims or defenses of the party that sought it.' " *Victor Stanley,* 269 F.R.D. at 531 (quotations omitted). Further, "courts find prejudice where a party's ability to present its case or to defend is compromised." *Id.* at 532.

"[S]peculative or generalized assertions that the missing evidence would have been favorable to the party seeking sanctions are insufficient." *Rimkus,* 688 F.Supp.2d at 616. But, "[t]he burden placed on the moving party to show that the

lost evidence would have been favorable to it ought not be too onerous, lest the spoliator be permitted to profit from its destruction." *Id.* (internal quotation marks and citation omitted). It would be unfair to require an innocent party seeking discovery to show that information lost through spoliation is relevant and prejudicial when the lost discovery cannot be replaced, or its content determined. *Id.* In the case of willful spoliation, "the spoliator's mental culpability [is] itself evidence of the relevance of the documents destroyed." *Zubulake IV,* 220 F.R.D. at 221.

Here, Defendants permanently deleted data and consequently the contents and volume of the deleted data is not knowable. Tr. Hrg. 3/25/21 at 104. As a result, it is unfair to require Plaintiffs to prove that the deleted data would have been favorable to them. From the names of the deleted files, it appears that the contents would have been relevant to the dispute, including a file that appeared to contain a document from Plaintiffs that would have contained the history of the development of their software. Having this document would have given Defendants the keys to develop their own software based on what Plaintiffs had already developed. *Id.* at 228. Plaintiffs' expert also testified that this document was likely added to the PVT simulator project folder that was permanently deleted in November 2019, after this lawsuit was filed. *Id.* at 45-48. Plaintiffs have established that data has been intentionally deleted that is likely relevant.

20

Thus, Defendants must show that the data exists somewhere else (no prejudice) or was not relevant. The Defendants have failed to do so. First, their expert concedes that the file that would have contained the history of Calsep's software development was permanently deleted and not found in the data he reviewed. *Id.* at 220-21. Even though Defendants' expert testified that he found many of the names of the allegedly deleted project files on one server or the other, he testified that one project file was not found, *id.* at 170-71, (URCAT project filed did not appear on any server), and 16 change sets were destroyed after the filing of the lawsuit, *id.* at 195. Mr. Schnell's testimony regarding his confirmation that the contents were the same only applied to the "super majority" of the files to which Mr. Myers identified as deleted, not all of them. *Id.* at 171. Nonetheless, Mr. Schnell testified that there was enough data there to perform an analysis of Defendants' source code and source code control system for this case. *Id.* at 205-06.

Plaintiffs have provided ample evidence of Defendants' destruction and manipulations, even if somewhat confusing. Whether there is sufficient data available to do a complete analysis is disputed. Plaintiffs' expert, who has performed similar analysis in over 100 cases, testified that he had no confidence in the data, or that he could get a reliable result. *Id.* at 104, 228. The deletions are permanent and unknowable amounts of data have been erased from the Defendants' servers. Thus, the Court concludes that Defendants willfully prevented the Plaintiffs from obtaining

evidence necessary to establish their claim that Sah stole trade secret information and shared it with them to develop a competing product. Defendants offered expert opinion on the status of destruction but did not bring fact witnesses to explain what they did, when, or why. Defendants have failed to carry their burden to rebut Plaintiffs' evidence of intentional destruction of relevant evidence that prejudiced Plaintiffs.

Default judgment against a noncompliant party is appropriate when no lesser sanction could achieve the appropriate level of deterrence. *United States v. $49,000 Currency, et al.*, 330 F.3d 371, 376 (5th Cir. 2003) (finding that only partial compliance with previous orders rendered default judgment appropriate). Here, the Court has given the Defendants multiple opportunities to comply, and particularly instructed counsel that the last order was a last chance. Nonetheless, even after that warning, Defendants deleted multiple change sets in defiance of this Court's order.

Rule 37 death penalty sanctions are "justified only in the most egregious cases, such as . . . intentionally destroying evidence by burning, shredding or wiping out computer hard drives." *Arya Risk Mgt. Systs., Pvt., Ltd. v. Duffossat Capital Puerto Rico, LLC*, Civil Action No. H-16-3595, 2019 WL 6840395, at *8 (S.D. Tex. Aug. 22, 2019) (quoting Quantlab, 2014 WL 651944 at * 9). "This is an egregious case. Defendants have willfully and intentionally attempted to manipulate the judicial system and the court's numerous hearings on discovery have been met with

22

delay tactics and deceit. A less drastic sanction would not achieve the desired deterrent effect." *Id.*

Plaintiffs should be awarded their cost of expert and reasonable attorneys' fees expended in investigating Defendants' spoliation of evidence, and in preparing, filing, and prosecuting their motion for sanctions, including briefing and court appearances. *Id.*; FED. R. CIV. P. 37 (2)(c). If this Report and Recommendation is adopted, the court will set a briefing schedule for costs and fees.

## IV.    CONCLUSION

The Court recommends that Plaintiffs' motion for sanctions requesting a default judgment against Defendants Ashish Dabral, IRC, and IPSS should be **GRANTED**, ECF Nos. 258, 259 & 284, and should be awarded their expert and attorneys' fees.

Plaintiffs' motion to show cause is **DENIED as MOOT**. ECF No. 256.

**The Parties have fourteen days from service of this Report and Recommendation to file written objections. 28 U.S.C. § 636(b)(1)(C); FED. R. CIV. P. 72(b). Failure to file timely objections will preclude review of factual findings or legal conclusions, except for plain error. *Quinn v. Guerrero*, 863 F.3d 353, 358 (5th Cir. 2017).**

Signed at Houston, Texas, on April 29, 2021.

_____

**Dena Hanovice Palermo**
**United States Magistrate Judge**

23