United States District Court
Southern District of Texas
**ENTERED**
February 18, 2022
Nathan Ochsner, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| CALSEP A/S, | § | |
| CALSEP, INC., | § | |
| | § | |
| *Plaintiffs,* | § | |
| v. | § | No. 4:19-CV-1118 |
| | § | |
| INTELLIGENT PETROLEUM | § | |
| SOFTWARE SOLUTIONS, LLC, | § | |
| ASHISH DABRAL, | § | |
| INSIGHTS RESERVOIR | § | |
| CONSULTING, LLC, | § | |
| | § | |
| *Defendants.* | § | |

# MEMORANDUM AND ORDER

Plaintiffs Calsep A/S and Calsep, Inc. (collectively "Plaintiffs") seek recovery of their attorneys' fees and costs for experts from Defendants Intelligent Petroleum Software Solutions, LLC, Ashish Dabral ("Dabral"), and Insights Reservoir Consulting, LLC's, (collectively "Defendants"). Pls' Mot. Attys' Fees, ECF No. 307. This Court previously granted Plaintiffs' motion for sanctions, including a default judgment against Defendants, as well as recovery of their attorneys' fees and costs. Order, ECF No. 304, *adopting* Report & Recommendation, ECF No. 293. The only remaining issue is the appropriate amount of attorneys' fees and costs to award. Plaintiffs requested $505,544.80 in attorneys' fees and $374,138.00 in expert costs,

1

for a total award of $879,682.80. ECF No. 307. Based on a thorough review of the briefing, case law, and the evidence presented, the Court finds Plaintiffs are entitled to full reimbursement of their expert costs, and a reduced amount for their attorneys' fees.

I.   BACKGROUND

This lawsuit arose after Defendant Pashupati Sah ("Sah") left Plaintiffs' employment. Original Compl., ECF No. 1. Plaintiffs allege that Sah misappropriated Plaintiffs' trade secret information and shared it with the other Defendants to develop their own competing product. *Id*; Fourth Am. Compl., ECF No. 205 at 2-3.

Throughout the litigation process, Plaintiffs sought production of Defendants' source code control software[1] to determine if Defendants used Plaintiffs' software to make a competing product in violation of trade secrets laws. Myers Decl., ECF No. 51-1 at 11. Despite Plaintiffs' discovery requests and this Court's orders,[2] Defendants did not produce the source code.[3] After exhausting all other options

---

[1] Source code control systems "manage and record the intricate details of every change to the source code over time–who made the change, when the change was made, and what the change was." Myers Decl., ECF No. 51-1 at 9. Plaintiffs' expert Monty Myers stated that he intended to compare Plaintiffs' source code control system with Defendants' source code control system to determine what influenced the design of Defendants' source code. *Id.* at 11.

[2] This Court granted Plaintiffs' motion to compel, ECF No. 108, ordering Defendants to produce everything given to their computer forensics expert. ECF No. 150. The Court subsequently granted Plaintiffs' second motion to compel, ECF Nos. 109, 110, ordering Defendants to produce Sah's hard drives and other requested discovery no later than March 13, 2020. ECF No. 161.

[3] It is undisputed that Defendants maintained a source code control system to manage the historical development of their code. Schnell Decl., ECF No. 263 at 3; Dabral Aff., ECF No. 16-1 ¶¶ 16-17.

including obtaining two court orders that Defendants produce the source code, Plaintiffs moved for sanctions, claiming Defendants permanently deleted the files from their system. ECF No. 259 at 17-18. Both Parties' experts agreed that data was deleted from Defendants' system but disagreed as to the extent of the destruction.[4] Myers Decl., ECF No. 259-1 at 6-20; Schnell Decl., ECF No. 263-6 at 4, 5, 8.

After two hearings and reviewing the evidence and briefing on sanctions, this Court determined that sanctions were appropriate, a default judgment should be entered against the Defendants, and Plaintiffs should be awarded their attorneys' fees and costs for experts. R&R, ECF No. 293. Defendants objected. ECF No. 303. Judge Ellison overruled the objections and adopted the Report and Recommendation in full. Order, ECF No. 304.

After Judge Ellison's ruling, the Court entered a scheduling order for briefing Plaintiff's attorneys' fees and costs. Order, ECF No. 305; Order, ECF No. 309. Shortly thereafter, Dabral notified this Court that he filed for bankruptcy protection. Def.'s Suggestion of Bankruptcy, ECF No. 310. Accordingly, the case was automatically stayed. 11 U.S.C. § 362. Once the bankruptcy stay had been lifted, Plaintiffs filed the additional briefing this Court ordered. ECF Nos. 312, 313.

---

[4] *Compare* ECF No. 259-1 ¶ 49 (Plaintiffs' expert stated he has no confidence that the materials Defendants produced are complete, accurate, or reliable for his analysis) *with* ECF No. 263-6 at 4-5 (Defendants' expert confirmed that the source code for the projects were able to build without any errors and could go back in time to review source code).

3

Defendants oppose the award of expert costs, arguing that Plaintiffs failed to provide sufficient supporting documentation. ECF No. 315. Defendants have not, however, challenged Plaintiffs' attorneys' fees. *Id.*

## II. ATTORNEYS' FEES AND COSTS UNDER RULE 37

When a party fails to comply with a discovery order, the court may impose a broad range of sanctions, including default judgment, as the Court did in this case. FED. R. CIV. P. 37. In addition, the court is authorized to order the disobedient party "to pay the reasonable expenses, including attorney's fees, caused by the failure …." FED. R. CIV. P. 37(b)(2)(c); *see Smith & Fuller v. Cooper Tire & Rubber Co.*, 685 F.3d 486, 489-91 (5th Cir. 2012) (affirming attorney's fee sanction for violation of a protective order). "A party can be held responsible only for the *reasonable* attorneys' fees and expenses caused by the party's misconduct." *Smith & Fuller*, 685 F.3d at 490 (emphasis added).

In the Fifth Circuit, the court determines a *reasonable* attorney's fee in two steps. *Jimenez v. Wood Cnty, Tex.*, 621 F.3d 372, 379-80 (5th Cir. 2010). First, the court must determine the lodestar, which is the number of hours *reasonably* worked multiplied by the prevailing hourly rate in the community for similar work. *Id.*[5] This

---

[5] The party seeking attorneys' fees bears the burden of establishing the *reasonable* number of hours expended, evidenced by time records. *See League of United Latin Am. Citizens No. 4552 (LULAC) v. Roscoe Indep. Sch. Dist.*, 119 F.3d 1228, 1232 (5th Cir. 1997) (citing *Watkins v. Fordice*, 7 F.3d 453, 457 (5th Cir. 1993)). The moving party also has the burden to establish a *reasonable* hourly rate, defined as the market rate where the district court is located. *Black v. SettlePou, P.C.*, 732 F.3d 492, 502 (5th Cir. 2013). Parties provide affidavits of other attorneys in the community to

calculation does not consider any time that is excessive, duplicative, or inadequately documented. *Id.* at 379–80 (citing *Watkins*, 7 F 3d. at 457).

Next, once the court determines the lodestar, the court can adjust if needed based on the factors set forth in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717–19 (5th Cir. 1974).[6] However, there is a strong presumption that the lodestar is reasonable and needs no further modification. *See Heidtman v. County of El Paso*, 171 F.3d 1038, 1044 (5th Cir. 1999); *see also Perdue v. Kennedy A.*, 559 U.S. 542, 130 S. Ct. 1662, 1672 (2010) (discussing how the lodestar method is preferred for awarding reasonable attorney's fees).[7]

---

establish the reasonable hourly rate. *Tollett v. City of Kemah*, 285 F.3d 357, 367 (5th Cir. 2002). While counsel's own affidavits may sometimes be sufficient if thoroughly evidenced and documented, a mere conclusory statement that a fee is reasonable is never sufficient. *See Smith & Fuller*, 685 F.3d at 490-91 (affirming award of attorneys' fees for violating a protective order); *see also Bynum v. Am. Airlines*, 166 F. App'x. 730, 736 (5th Cir. 2006) (vacating an order of attorney's fees when attorney's affidavit only provided a conclusory assertion that the fees were reasonable).

[6] The twelve factors include: (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal service properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or other circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client and; (12) awards in similar cases. *Id.* at 717–19.

[7] Following the Fifth Circuit's adoption of the *Johnson* factors, the Supreme Court stated that the lodestar method on its own is preferable to the *Johnson* approach because the *Johnson* factors, "gave very little actual guidance to district courts" thereby placing "unlimited discretion in trial judges and produc[ing] disparate results." *Pa. v. Del. Valley Citizens' Council for Clean Air*, 478 U.S. 546, 106 S. Ct. 3088, 3097 (1986). The Fifth Circuit interpreted the Supreme Court decision to incorporate the lodestar method with the *Johnson* factors by employing the two-step process discussed. *Combs v. City of Huntington*, 829 F.3d 388, 393 (5th Cir. 2016). The Fifth Circuit noted in *Combs* that enhancements using the *Johnson* factors should be rare and used only to guarantee adequate representation. *Combs*, 829 F.3d at 393 (quoting *Perdue*, 559 U.S. at 559).

### III.   PLAINTIFFS' ATTORNEYS' FEES MUST BE REDUCED

Plaintiffs seek to recover fees billed for the work their attorneys with Hunton Andrews Kurth, LLP performed: Alexis Gomez ("Gomez"), a partner with 26+ years of experience; Daniel Vivarelli ("Vivarelli"), a partner with 19 years of experience; Cameron Pope ("Pope"), a partner with 17 years of experience; and Allison Ebanks ("Ebanks"), an associate with 3 years of experience. Gomez Aff., ECF No. 307-21 at 3.[8] Plaintiffs provided billing statements demonstrating that these three partners and one associate spent 713.5 hours working on this case, attempting to obtain discovery, working with experts to analyze the discovery produced, filing motions to compel discovery, arguing those motions before the court, and seeking and obtaining sanctions for Defendants' failure to produce the requested discovery and destroying evidence.  Gomez spent 323.9 hours at $732 per hour; Vivarelli spent 271.2 hours at $700 per hour; Pope spent 110.4 hours at $700 per hour; and Ebanks spent 8 hours at $316 per hour. *Id*. The firm gave a 20% discount off its usual rates. *Id.* The total discounted attorneys' fees billed amounted to $505,544.80. *Id.* at 2.

#### A. Calculating the Lodestar for Plaintiffs' Attorneys' Fees

In calculating the lodestar, the court must ascertain a *reasonable* number of hours worked and multiply that by the prevailing hourly rate. *Jimenez*, 621 F.3d at 379-80.

---

[8] Plaintiffs had other counsel prior to Hunton Andrews Kurth.

6

### *1. The court must ascertain whether the hours billed are reasonable.*

First, the court must examine the reasonableness of the total hours billed. Plaintiffs' lead counsel Gomez testified in his affidavit that the fees in question were reasonable and necessary due to Defendants' behavior in discovery. Gomez Aff., ECF No. 307-21 at 1. He further states that the fees were "reasonable and necessary" to investigate Defendants' spoliation of evidence. *Id.*

Plaintiffs have the burden of proving the amount of time spent was reasonable. *See Saizan v. Delta Concrete Prods. Co.*, 448 F.3d 795, 799 (5th Cir. 2006). This requires exercising "billing judgment" by working efficiently and writing off unproductive or excessive hours. *Oramulu v. Wash. Mut. Bank*, No. H-0-00277, 2009 WL 7838118, at *4 (S.D. Tex. Jun. 11, 2009) (J. Ellison) (internal citations omitted). Plaintiffs must sufficiently document their hours to pass muster. *See Adhikari v. Daoud & Partners,* No. 4:09-CV-1237, 2017 WL 5904782, at *11 (S.D. Tex. Nov. 30, 2017) (J. Ellison) (quoting *Gagnon v. United Technisource Inc.*, 607 F.3d 1036, 1044 (5th Cir. 2010)).

Here, Plaintiffs provided detailed billing records that adequately document the time spent on this matter. However, the bills demonstrate duplicative hours because multiple partners performed essentially the same tasks. *See Rouse v. Target Corp*, 181 F. Supp. 3d 379, 389–90 (S.D. Tex. 2016) (reducing attorneys' fees when partners billed duplicative work). For example, Gomez billed 44 hours and Vivarelli

billed 58 hours to draft an expert declaration; Gomez billed 30 hours and Vivarelli billed 15 hours to prepare for a sanctions hearing; Gomez billed 48 hours and Vivarelli billed 28 hours to prepare for a second hearing; and Gomez billed 52 hours, Vivarelli billed 27 hours, and Pope billed 63 hours, all to draft and review the same response to Defendants' objections regarding this Court's Report and Recommendation. ECF Nos. 307-21 – 307-31.[9] This last item is perhaps the most telling example. Pope is an appellate specialist with 17 years of experience. He performed the initial research and drafting of the Plaintiffs' response, billing 63 hours. This work would seem justified. However, Gomez, the senior partner on the case billed almost as much time, 52 hours, to revise the work that his appellate partner prepared, and Vivarelli added about half as much time, 27 hours, as Gomez on top. The billing records do not show that Plaintiffs' counsel wrote off any of these hours. *See id*. The evidence provides no proof of billing judgment on these duplicative hours. *See id*.

Moreover, the evidence provides no justification for three partners spending this amount of time on the same tasks. *See, e.g., Preston Exploration Co., LP v. GSP, LLC*, No. H-0-3341, 2013 WL 3229678, at *12 (S.D. Tex. Jun. 25, 2013) (finding that staffing a case with all senior partners constituted overstaffing). Typically, in a case like this, staffing would include a partner and an associate. If the case is

---

[9] Bills for reviewing and responding to. ECF Nos. 307-21 – 307-31.

8

complicated, it may justify a partner, a senior associate, and a junior associate. Usually, the partner will bill less hours than the associates because of experience and efficiency. Here two of the three partners billed excessive hours for what appears to be the same work, showing no efficiency based on experience.

While parties are free to hire lawyers to staff a case as they see fit, when seeking reimbursement for their attorneys' fees, the court will award only what is reasonable. *Smith & Fuller*, 685 F.3d at 490. Here, the hours billed are duplicative. Consequently, case law requires an across-the-board reduction of the award. *Adhikari*, 2017 WL 5904782, at *11;[10] *accord Saizan*, 448 F.3d at 800 (10% reduction across-the-board for lack of billing judgment); *see also D2 Excavating, Inc. v. Thompson Thrift Constr., Inc.*, No. 2:16-CV-53, 2021 WL 3144539, at *9 (S.D. Tex. July 26, 2021) (reducing the lodestar amount by 30% "to compensate for a deficiency in the attorney's exercise of billing judgment for any work that was unproductive, excessive, or redundant."). After reviewing the bill, this Court finds that a reduction of 20% is reasonable to adjust for the number of hours billed.

### 2. *The court must determine the prevailing hourly rates in the community.*

Next, the court must determine the reasonableness of each attorneys' hourly

---

[10] In *Adhikari*, Judge Ellison reduced the lodestar on grounds of billing judgment. Judge Ellison excluded hours unrelated to the Rule 11 sanctions, reduced the lodestar by 10% for vague billing, and then subtracted an additional 10% for excessive billing and failure to exercise billing judgment. 2017 WL 5904782, at *12.

rate. To calculate the reasonable rate, the court must examine rates for attorneys with reasonable skill in the same geographic area. *See Oramulu*, 2009 WL 7838118, at *2 (citing *Watkins v. Fordice*, 7 F.3d 453, 458-59 (5th Cir. 1993). In support of the hourly rates charged, Plaintiffs' counsel attached statistics from the Thompson Reuters' Peer Monitor billing rate software. Exhibits 1–4, ECF No. 313-2.[11] Plaintiffs' evidence shows that the rates in the instant case are comparable to the market rate for equally experienced attorneys in similarly sophisticated practices.

However, we must again examine the staffing choices as the billing rates of each lawyer influence the overall reasonableness of the bill. Staffing a case with three senior partners with essentially no associates is overstaffing. *See*, *e.g.*, *Preston Exploration*, 2013 WL 3229678, at *12. When a case is overstaffed, the court may reduce individual attorneys' rates to compensate. *Id.* at *6 (reducing hourly rates due to overstaffing of overqualified attorneys). This case did not demand three partners without any associates for tasks that included legal research, analyzing case law, drafting initial responses, working with experts, preparing expert affidavits, and reviewing exhibits. In fact, the partners in this case performed 98.7% of the work involved (705.5 hours/713.5 total hours). ECF No. 307-21 at 3. This allocation of

---

[11] Plaintiffs relied on four reports generated from the Peer Monitor hourly billing rate software program: a report of the hourly rate of all U.S. firms for associates and equity partners practicing litigation in Houston for the calendar year 2020, ECF No. 313-2, and through September 2021, ECF No. 313-3, a report of the hourly rate of for top 100 law firms for associates and equity partners practicing litigation in Houston for the calendar year 2020, ECF No. 313-4, and through September 2021, ECF No. 313-5.

work demonstrates unreasonable rates, as associates could have done much of the work partners performed at lower billing rates. *See Gill v. Bullzeye Oilfield Servs,* No. SA-15-CV-1166 DAE, 2018 WL 4677902, at *5 (W.D. Tex. July 19, 2018).

Here, Vivarelli performed work typical of a mid-level associate. Therefore, it is appropriate to reduce his rate from $700 per hour to $500 per hour to reflect a mid-level associate rate. *See*, *e.g.*, *Gill*, 2018 U.S. Dist. Lexis 171604, at *16 (reducing a partner's rate from $450 to $325 when the partner performed 90% of the work); *see also U.S. v. Cmty. Health Sys.,* No. H-09-15651, 2015 WL 3386153, at *19 (S.D. Tex. May 4, 2015) (reducing each hourly rate by 30% when only partners performed the work without an associate).

### 3. *Application of the Johnson factors is not required.*

Finally, the court may apply the Johnson factors in its discretion to further adjust the lodestar fee. Further reduction under the *Johnson* factors is unnecessary where the lodestar amount already considers market rates and amount of time involved. *See Saizan*, 448 F.3d at 900. There is a strong presumption towards the reasonableness of the lodestar rate without adjustment under the *Johnson* factors. *See Preston Exploration*, 2013 WL 3229678, at *10.

Here, the lodestar already considered counsels' time and expertise. Plaintiffs' counsels' rates reflect the market rate for sophisticated counsel in a highly regarded

11

law firm. ECF No. 313-4. Additionally, the case never proceeded past discovery. Thus, any further reduction according to the *Johnson* factors is unnecessary.

Therefore, Defendants are ordered to pay Plaintiffs $362,002.24 to reimburse their attorneys' fees.[12]

## IV.   PLAINTIFFS ARE ENTITLED TO RECOVER THEIR EXPERT COSTS

Plaintiffs also request reimbursement of the cost of their expert in connection with Defendants' destruction of evidence. ECF Nos. 307, 316.

In general, a district court may hold a party responsible for those fees and expenses their failure to comply with discovery caused. *Tollett,* 285 F.3d at 369. In such cases, the recovery of forensic expert fees is an appropriate part of sanctions alongside attorneys' fees. *See Arya Risk Mgmt. Sys. v. Dufossat Capital P.R.*, No. H-16-3595, 2020 WL 11231842, at *5 (S.D. Tex. Jun. 25, 2020) (awarding the entire cost of Defendants' expert fees related to Rule 37 sanctions following spoliation of evidence).

Here, Eureka Software Solution, Inc.'s ("Eureka") forensic analysts and its

---

[12] The calculation of the lodestar:
    Gomez:     323.9 hours x $732/hour
    Vivarelli:   271.2 hours x $500/hour
    Pope:      110.4 hours x $700/hour
    Ebanks:    8 hours x $316/hour

Total lodestar = $452,502.80

With the 20% reduction, the attorneys' fees = $362,002.24 ($452,502.80 x 80%).

CEO Monty Myers ("Myers") were essential to this case. ECF No. 293 at 12-14. Defendants argue that Plaintiffs have not sufficiently documented the requested $374,130.00 in costs and that the invoices are not sufficiently descriptive. ECF No. 315 at 2. Defendants' arguments are without merit.

In his affidavit, Myers testified to his and his associates' hourly rates, and detailed each monthly invoice included. ECF No. 307-1. Additionally, Myers provided several declarations concerning the work investigating Defendants' spoliation of evidence. *See* ECF Nos. 248-3, 259-1, 265-1, and 272-1. These declarations provide a daily explanation of Myers' team's work. *Id*. Myers referenced these past declarations in his affidavit to tie each declaration with the corresponding invoice. ECF No. 307-1 at 3–25. This evidence paints a clear narrative and sufficient detail for the services rendered. Accordingly, this Court finds that Plaintiffs have provided sufficient documentation to support the full award of expert fees. *See*, *e.g.*, *Arya*, 2020 WL 11231842, at *6 (awarding the entire expert fees related to destruction of evidence when Plaintiffs provided a compilation of the billing hours and description of time spent).

Therefore, Defendants is ordered to pay Plaintiffs $374,130.00 for reimbursement of their expert costs.

## V.     CONCLUSION

This Court **ORDERS** that Plaintiffs' Motion for Attorneys' Fees and Expert Costs, ECF No. 307, is **GRANTED** as follows: Defendants are **ORDERED** to pay Plaintiffs $362,002.24 to reimburse for their attorneys' fees and $374,130.00 to reimburse for their expert costs.

**IT IS SO ORDERED.**

Signed at Houston, Texas, on February 18, 2022.

_____
**Dena Hanovice Palermo**
**United States Magistrate Judge**