United States District Court
Southern District of Texas
**ENTERED**
June 06, 2022
Nathan Ochsner, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| CALSEP A/S, | § | |
| CALSEP, INC., | § | |
| | § | |
| *Plaintiffs,* | § | |
| v. | § | No. 4:19-cv-1118 |
| | § | |
| INTELLIGENT PETROLEUM | § | |
| SOFTWARE SOLUTIONS, LLC, | § | |
| ASHISH DABRAL, | § | |
| INSIGHTS RESERVOIR | § | |
| CONSULTING, LLC, and | § | |
| PASHUPATI SAH, | § | |
| | § | |
| *Defendants.* | § | |

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

This Court previously granted Plaintiffs Calsep A/S and Calsep, Inc.'s (collectively "Plaintiffs") motion for sanctions, including a default judgment against Defendants Intelligent Petroleum Software Solutions, LLC ("IPSS"), Ashish Dabral ("Dabral"), and Insights Reservoir Consulting, LLC's ("IRC") (collectively "Defendants"), as well as recovery of attorneys' fees and expert costs. Order, ECF No. 304, adopting Report & Recommendation, ECF No. 293; Order, ECF No. 320. Defendants now move for reconsideration, arguing that newly discovered evidence has come to light that would have affected the outcome of these prior orders, requiring them to be set aside and allowing the case to go forward. Defs.' Mot.

1

Reconsid., ECF No. 325.[1] Plaintiffs oppose the motion. Pls.' Resp., ECF No. 325.[2] Based on a careful review of the record, briefing, and applicable law, the Court determines that Defendants have failed to meet the strict requirements of Rule 60 (b)(2) because the evidence is not new, Defendants failed to exercise due diligence in discovering the evidence, and they have failed to carry their burden to establish that the evidence is controlling and material such that the outcome would have been different. Accordingly, the Court recommends that Defendants' motion should be denied.

## I.   BACKGROUND.

This lawsuit arose after Defendant Pashupati Sah ("Sah") left Plaintiffs' employment. Original Compl., ECF No. 1 (filed on March 27, 2019). Plaintiffs allege that Sah misappropriated Plaintiffs' trade secret information and shared it with the other Defendants to develop a competing product. *Id*; Fourth Am. Compl., ECF No. 205 at 2-3.

Throughout the litigation process, Plaintiffs sought production of Defendants'

---

[1] Judge Ellison, the District Judge to whom this case is assigned, referred this motion for disposition. *See* Not. Referral, ECF No. 328. Pursuant to 28 U.S.C. § 636(b)(1)(A), a motion to reconsider a default judgment and sanctions is a dispositive motion appropriate for Report and Recommendation. *See Jenkins v. LaSalle Sw. Corr.*, No. 3:17-CV-1376-M-BN, 2020 WL 2106355, at *1 (N.D. Tex. Jan. 28, 2020), report and recommendation adopted, No. 3:17-CV-1376-M, 2020 WL 2105842 (N.D. Tex. Apr. 30, 2020) (Rule 60(b) motion was referred to a magistrate judge for Report and Recommendation where the denial of reconsideration resulted in the final disposition of the case).

[2] Defendants filed a reply. ECF No. 327.

source code control software[3] to determine if Defendants used Plaintiffs' software to make a competing product in violation of trade secrets laws. Myers Decl., ECF No. 51-1 at 11. Despite Plaintiffs' discovery requests and this Court's orders,[4] Defendants did not produce the source code.[5] After more than a year of discovery efforts and exhausting all other options including obtaining two court orders that Defendants produce the source code, Plaintiffs moved for sanctions, claiming Defendants permanently deleted the files from their system. Pls.' Mot. Sanctions, ECF No. 259 at 17-18. Both Parties' experts agreed that data was deleted from Defendants' system but disagreed as to the extent of the destruction.[6] Myers Decl., ECF No. 259-1 at 6-20; Schnell Decl., ECF No. 263-6 at 4, 5, 8.

---

[3] Source code control systems "manage and record the intricate details of every change to the source code over time–who made the change, when the change was made, and what the change was." Myers Decl., ECF No. 51-1 at 9. Plaintiffs' expert Monty Myers stated that he intended to compare Plaintiffs' source code control system with Defendants' source code control system to determine what influenced the design of Defendants' source code. *Id.* at 11.

[4] This Court granted Plaintiffs' motion to compel, ECF No. 108, ordering Defendants to produce everything given to their computer forensics expert. Order, ECF No. 150. The Court subsequently granted Plaintiffs' second motion to compel, ECF Nos. 109, 110, ordering Defendants to produce Sah's hard drives and other requested discovery no later than March 13, 2020. Order, ECF No. 161. Shortly thereafter, the Court entered an *agreed* preliminary injunction, in which Defendants were ordered "to return to Plaintiffs all of Plaintiffs' trade secret and confidential information" in their possession, custody, or control within 14 days of the order. Ag'd Order Prelim. Inj., ECF No. 198. Defendants failed to return Plaintiffs' confidential information.

[5] It is undisputed that Defendants maintained a source code control system to manage the historical development of their code. Schnell Decl., ECF No. 263 at 3; Dabral Aff., ECF No. 16-1 ¶¶ 16-17.

[6] *Compare* Myers Decl., ECF No. 259-1 ¶ 49 (Plaintiffs' expert stated he has no confidence that the materials Defendants produced are complete, accurate, or reliable for his analysis) *with* Schnell Decl., ECF No. 263-6 at 4-5 (Defendants' expert confirmed that the source code for the projects were able to build without any errors and could go back in time to review source code).

After two hearings and reviewing the evidence and briefing on sanctions, this Court determined that sanctions were appropriate, a default judgment should be entered against the Defendants, and Plaintiffs should be awarded attorneys' fees and expert's costs. R&R, ECF No. 293. Defendants objected. ECF No. 303. Judge Ellison overruled the objections and adopted the Report and Recommendation in full. Order, ECF No. 304.

After Judge Ellison's ruling, this Court calculated the appropriate award of Plaintiffs' attorneys' fees and expert's costs. Order, ECF No. 320. Pursuant to Rule 60(b)(2), Defendants now move for reconsideration of the Court's Report and Recommendation on Plaintiffs' motion for sanctions. R&R, ECF No. 293; Adopted, ECF No. 304.

## II.   THE RECONSIDERATION STANDARD UNDER RULE 60(B)(2).

Federal Rule of Civil Procedure 60(b)(2) allows the court to relieve a party from a proceeding, order, or judgment if relevant evidence has come to light that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b). FED. R. CIV. P. 60(b)(2). In the Fifth Circuit, the party submitting a Rule 60(b)(2) motion must show that (1) it exercised reasonable diligence in obtaining the information, and (2) that the evidence is material and controlling and clearly would have produced a different result if it had been presented before the original verdict. *Hesling v. CSX Transp., Inc.*, 396 F.3d 632,

639 (5th Cir. 2005) (quoting *Goldstein v. MCI WorldCom*, 340 F.3d 238, 257 (5th Cir.2003)). This is a high threshold as the court will not reopen a judgment if the evidence is merely cumulative or impeaching and would not have changed the result. *Hesling*, 396 F.3d at 639 (quoting *Trans Mississippi Corp. v. United States*, 494 F.2d 770, 773 (5th Cir.1974)).[7]

## III. DEFENDANTS ARE NOT ENTITLED TO RECONSIDERATION.

Defendants cannot sustain their motion for reconsideration on either prong of the test. *Hesling*, 396 F.3d at 639. Defendants did not exercise due diligence in obtaining the information. Further, Defendants have failed to show that the evidence in question would have produced a different result if it had been presented before

---

[7] Defendants claim that the Fifth Circuit has ruled that the reasonable diligence requirement may be set aside to prevent a manifest miscarriage of justice. ECF No. 325 at 5 (citing *Ferrell v. Trailmobile, Inc.*, 223 F.2d 697, 698 (5th Cir. 1955)). Defendants' argument is without merit. First, there is no manifest miscarriage of justice in this case. Second, Defendants have overstated the Fifth Circuit's ruling. In *Ferrell*, the lien holder on a truck trailer sued, arguing that the debtor missed a payment. After judgment in favor of the lien holder, the debtor produced overwhelming evidence that the debt had been paid. *Ferrell*, 223 F.2d at 698. Despite producing this evidence, the district court denied debtor's Rule 60(b) motion and declined to receive any of debtor's testimony. *Id.* at 699. Relying on Rule 60(b), without specifying a subpart, the Fifth Circuit reversed and remanded, finding that conclusive evidence established that the debtor paid all the installments on the trailer, and the judgment should be set aside to prevent a manifest miscarriage of justice. *Id.* at 698-99. Subsequently, the Fifth Circuit clarified that *Ferrell* implicated Rule 60(b)(5). *See Johnson Waste Materials v. Marshall,* 611 F.2d 593, 599 (5th Cir.1980). The Fifth Circuit explained that Rule 60(b)(5) does not require newly discovered evidence or due diligence, stating that *Ferrell* is "fully justified by equitable considerations" preventing a windfall to the judgment beneficiary. *Id.* In contrast, under Rule 60(b)(2), the judgment beneficiary will most certainly be deprived of the judgment in its favor because the motion will only be granted if the newly discovered evidence is such that a new trial would probably produce a different result. *Id.*; *see Central States, Se. & Sw. Areas Pension Fund v. Central Cartage Co.*, 69 F.3d 1312, 1314 (7th Cir. 1995) (citing *Johnson Waste Materials,* 611 F.2d 593) (Judge Easterbrook followed the Fifth Circuit's refusal to expand *Ferrell's* ruling to Rule 60(b)(2)). In *Johnson,* the Fifth Circuit found that Defendant's failure to find bank statements that were misplaced in his house until after the trial did not establish due diligence under Rule 60(b)(2). 611 F.2d at 599.

the order awarding death penalty sanctions.

### A. Defendants Did Not Exercise Reasonable Diligence In Obtaining The Evidence.

To prevail on a Rule 60(b)(2) motion, the movant must first prove that it exercised reasonable diligence in obtaining the information. *Hesling*, 396 F.3d at 639. If a defendant exercised reasonable diligence prior to the judgment but was *unable to find* the new evidence, then the new evidence will be validly considered under Rule 60(b)(2). *Id*. (emphasis added). Defendants cannot succeed on their Rule 60(b)(2) motion as they failed to exercise reasonable diligence in initial discovery regarding the forensic images.

As way of background, Bright Petroleum Software Solution ("BPSS"),[8] is a software engineering company located in India. S. Dabral Decl., ECF No. 325-2 at ¶ 3. BPSS was working with Defendants on developing a PVT simulator software program, called InPVT. *Id.* The Court found that BPSS' server housed the Defendants' data and software for the development of the PVT product, for which BPSS wrote the code. R&R, ECF No. 293 at 10. Now, Defendants contend that, in late 2019, "in connection with the defense of the instant lawsuit," BPSS hired a forensic auditor—SYSTOOLS—to conduct a series of audits to determine whether any data from Sah's drives were transferred to BPSS' servers. S. Dabral Decl, ECF

---

[8] BPSS was a defendant in this lawsuit until it was dismissed on personal jurisdiction grounds. Minute Entry, 1/23/2020.

No.325-2 at ⁋ 4; ECF No. 325 at 8. As part of that audit process, SYSTOOLS created forensic images of BPSS' servers. *Id.* These forensic copies were placed in storage at some point in 2020. *Id.* (citing S. Dabral Decl, ECF No.325-2 at ⁋ 6). Defendants assert that Sudhanshu Dabral (Ashish Dabral's brother) could not have obtained the forensic images with reasonable diligence because, although he was involved in the audit that created the copies and he put them in storage in 2020, he *forgot* they existed until December 2021 when he was notified that his storage lease was about to expire. ECF No. 325 at 8-9 (citing S. Dabral Decl, ECF No.325-2 at ⁋⁋ 7-8). At that time, he went to the storage facility and discovered the forensic images. S. Dabral Decl, ECF No. 325-2 at ⁋ 8. In addition, without citing supporting evidence, Ashish Dabral and Defendants claim that they had no knowledge of the forensic images at all. ECF No. 325 at 8, 9.

Significant evidence shows otherwise. It is undisputed that SYSTOOL's performed the 2019 audit of BPSS' servers and computers and created forensic images during that audit. The evidence in this case shows that Defendants were aware of the existence of the forensic images. In an earlier declaration to the Court, Ashish Dabral testified that, he was intimately involved in the development of the Defendants' InPVT software. A. Dabral Supp. Decl., ECF No. 91-8 at ¶ 7. He flew to India often to oversee its development. *Id.* Dabral testified that, in October and November 2019, "we" performed an audit/inspection of BPSS' servers and

7

computers to ensure it was not in possession of Calsep's trade secret information. *Id.* at ¶ 8. He further testified that the results of that audit confirmed that BPSS never possessed Calsep's confidential information. *Id.* He further referenced Defendants' forensic expert Paul Price's separate opinion to that effect. *Id.* Defendants retained Mr. Price as a testifying expert to review the SYSTOOLS forensic investigation/audit. Mr. Price provided an affidavit to the Court revealing that BPSS provided him with "USB history logs from 14 computers, servers, and their Team Foundation Server." P. Price Decl., ECF No. 91-11 at ¶ 5.[9] Based on his review of some of the information SYSTOOLS collected, he concluded that Calsep's data was not transferred to the BPSS system and that Sah's external devices to which he copied Calsep's information were not attached to BPSS' systems. *Id.* at ¶ 8.

The Court is familiar with Mr. Price's affidavit because the information provided to Mr. Price was the subject of two Court orders. Orders, ECF No. 150, 186. First, Plaintiffs filed a motion to compel to obtain all the material provided to Defendants' testifying expert, Mr. Price, whose affidavit was used in support of their opposition to Plaintiffs' request for injunctive relief. Motion, ECF No. 108 at 1-2. On February 26, 2020, the Court ordered Defendants to produce everything they provided to Mr. Price. Order, ECF No. 150. It turns out that Defendants provided Mr. Price with two reports SYSTOOLS prepared based on the audit. In response to

---

[9] Mr. Price's affidavit is dated November 21, 2019. Price Aff., ECF No. 91-11 at 3.

that order, Defendants provided a copy of the SYSTOOLS report to Plaintiffs, but it was heavily redacted. Defs.' Mot. In Camera Review, ECF No. 162. After Plaintiffs objected to the redactions, Defendants requested an in-camera review based on their assertion that work-product privilege protected the matters redacted. *Id.* After conducting the review, on March 17, 2020, this Court issued another order requiring Defendants to produce unredacted copies of the SYSTOOLS report because it was provided to Mr. Price and he reviewed it in formulating his opinions. Order, ECF No. 186. A review of the report reveals that SYSTOOL specifically informed Defendants of the forensic images. SYSTOOLS' written report[10] to Defendants identified seventeen forensic images from BPSS systems and servers along with a chart listing each forensic image, the drive name, serial number, and other identifying information. ECF No. 326, Ex. 2 at § 2.[11]

It defies credulity for Defendants to claim ignorance of the forensic images or that the forensic images were lost until S. Dabral received notice of the BPSS lease expiration. ECF No. 325 at 8. It takes far less than reasonable diligence to uncover evidence which Defendants knew existed and of which they had been explicitly made aware. *See Johnson,* 611 F.2d at 599 (Fifth Circuit found defendant's failure

---

[10] The report provided to the Court does not contain a date, however, Mr. Price reviewed it before signing his November 21, 2019 affidavit.

[11] According to Defendants' expert, the forensic images were made on October 19, 2019. Schnell Decl., ECF No. 327-2 at ¶ 4.a.

to find bank statements that were misplaced in his house until after the trial did not establish due diligence under Rule 60(b)(2)). Thus, Defendants failed to show that the forensic images were not discoverable with reasonable diligence. SYSTOOL's 2019 audit report explicitly identified the forensic images in question. ECF No. 326, Ex. 2 at § 2. Defendants were at minimum constructively aware of their existence and cannot claim ignorance.

More importantly, Defendants completely ignore that sanctions were awarded because they *destroyed* the evidence that purportedly is on these images when it existed on the BPSS servers to thwart Plaintiffs' discovery efforts. R&R, ECF No. 293. This Court found that Defendants, sophisticated in computer software, went into the bowels of the BPSS system to permanently delete data from the source code control system. This was not a simple delete button but required advanced knowledge and response to prompts asking whether the operator was sure he wanted to delete. *Id.* at 15. For Defendants to now claim that they found newly discovered copies of the data they intentionally deleted that justifies setting aside sanctions, overlooks the time Plaintiffs and this Court wasted on motions and orders compelling Defendants to produce this data, and the expense Plaintiffs incurred for their expert trying to make sense of the garbage Defendants produced. Due diligence would have been for Defendants to produce the forensic images when they were

10

made in October 2019, instead of putting them in storage in 2020,[12] long after responses to discovery calling for the production of that source code control data were due and during the time when Court orders compelling their production were issued. *See, e.g.,* Order, ECF No. 186 (entered on March 17, 2020); Order, ECF No. 230 (entered on Aug. 3, 2020); Order, ECF No. 250 (entered on Aug. 26, 2020). In fact, quite to the contrary, throughout 2020, Defendants did not exercise due diligence to discover data; instead, they continued to delete data, violating multiple court orders to preserve and produce their data without deletions or manipulations. R&R, ECF No. 293 at 15 (citing Ag. Prelim. Inj. Order, ECF No. 198; Order, ECF No. 150; Order, ECF No. 161; Order, ECF No. 230; Order, ECF No. 250). Had Defendants produced the forensic images in October or November 2019, Plaintiffs would not have had to file any of their motions to compel, sanctions would not have been necessary, and this case would be proceeding to trial. Nothing Defendants have produced to the Court satisfies the significant burden required to show that they exercised any diligence, let alone due diligence to produce this data before sanctions were awarded.

Therefore, Defendants fail the first prong of the Rule 60(b)(2) test. *Hesling*, 396 F.3d at 639.

---

[12] Defendants assert that the storage unit was rented on March 9, 2020. Reply, ECF No. 327 at 8; Second S. Dabral Decl., ECF No. 327-8. However, Defendants fail to show on what date the forensic images were put in the storage unit.

11

### B. Defendants Have Not Showed That The Evidence Would Have Produced A Different Result If Discovered Before The Sanctions Order Was Entered.

To succeed on a Rule 60(b)(2) motion, the movant must demonstrate that that the evidence is material and controlling and clearly would have produced a different result if it had been presented before the original judgment or order. FED. R. CIV. P. 60(b)(2); *see also Goldstein*, 340 F.3d at 257. Defendants failed to show that the forensic images would have produced a different result if discovered before the award of sanctions. *See* FED. R. CIV. P. 60(b)(2); *see also Hesling*, 396 F.3d at 639.

Defendants contend that the new forensic images would have changed the result of Plaintiffs' motion for sanctions. ECF No. 325 at 10. Plaintiffs' expert Myers stated that Defendants' spoliation of evidence during discovery prevented him from determining the development history of Defendants' software. R&R, ECF No. 293 at 20. According to Defendants, the newly discovered forensic images are likely to change the result of Plaintiffs' motion for sanctions as the Court and Plaintiffs' expert can now determine the history of Defendants' software development. ECF No. 325 at 10.

In granting Plaintiffs' motion for sanctions, the Court determined that multiple deleted files were relevant. R&R, ECF No. 293 at 20. The Court did not narrow the relevant files only to those which Defendants claim are now reviewable. *Id*. Indeed, Plaintiffs' expert Myers stated that the amount of data Defendants destroyed is both

12

significant and unknowable. Myers Decl., ECF No. 326-1 at ¶ 2. As they readily admit, Defendants' forensic images do not allow for the review of deleted files that were created after the forensic images were taken. ECF No. 325 at 7. Further, Plaintiffs' expert testifies that, because of the significant amount of data that remains missing or destroyed, these forensic images are not sufficient to conduct a proper analysis of Defendants' software. Myers Decl., ECF No. 326-1 at ¶ 2, 3, 5.

Furthermore, the Court awarded sanctions not only for the failure to produce discovery, but for the intentional destruction of data. R&R, ECF No. 293 at 12-13. Therefore, the belated production of this data only reinforces the Court's award of death penalty sanctions, as it does not refute the assertions in Plaintiffs' motion that Defendants' spoliated evidence, but instead proves them. *Id.*

More significantly, Defendants failed to meet their burden to show that this evidence would have produced a different result. Nowhere do Defendants or their expert show that a review of the data (limited as it is) establishes that Defendants' source code was not based on Plaintiffs' confidential data. Instead, Schnell contends that Plaintiffs expert would have enough information to perform his analysis. Schnell does not say that he in fact ran all the data and in his expert opinion Defendants' InPVT program has not been derived from Plaintiffs' confidential data.[13]

---

[13] Quite to the contrary, the only evidence in the entire record suggests otherwise. The President of Calsep, Inc. testified during the hearing on Plaintiffs' motion for entry of final judgment that screenshots of Defendants' InPVT software show that its functionality is identical to Plaintiffs' PVT software. ECF Nos. 164-3, 164-4; Hr'g Tr., dated Apr. 20, 2022, ECF No. 335 at 34-37. The

13

In sum, Defendants have failed to show that their purportedly newly discovered evidence was controlling or material or that it would have clearly affected the outcome of the proceedings had they produced it earlier. *Goldstein*, 340 F.3d at 257.

IV. **CONCLUSION**

The Court recommends that Defendants' Motion for Reconsideration, ECF No. 325, should be **DENIED**.

**The Parties have fourteen days from service of this Report and Recommendation to file written objections. 28 U.S.C. § 636(b)(1)(C); FED. R. CIV. P. 72(b). Failure to file timely objections will preclude review of factual findings or legal conclusions, except for plain error.** *Quinn v. Guerrero*, **863 F.3d 353, 358 (5th Cir. 2017).**

Signed at Houston, Texas, on June 6, 2022.

_____
**Dena Hanovice Palermo**
**United States Magistrate Judge**

---

function tabs are the same, the order is the same. *Id*. The only difference is the color and font used on their webpage. *Id*. He further testified that it took Calsep over 40 years to develop and tweak its software to make the product it is today. He testified that it would have been impossible for Defendants to develop a comparable product in only a couple of years without access to Calsep's confidential source code. Hr'g Tr., dated Apr. 20, 2022, ECF No. 335 at 24. While his testimony was based on a review of the screenshots and not the actual software, it is quite damning.